2001 OK 3

Bill J. DAVIS and Erika Davis, husband and wife, Appellants,

v.

GHS HEALTH MAINTENANCE ORGA-NIZATION, INC., d/b/a Bluelincs, Inc., an Oklahoma Corporation, Appellee.

· No. 94,863.

Supreme Court of Oklahoma.

Jan. 16, 2001.

Rehearing Denied April 24, 2001.

Steven S. Mansell, Mark A. Engel, Steven S. Ashmore, Oklahoma City, OK, for Appellants.

Harvey D. Ellis, Jr., Kevin D. Gordon, Tamela R. Hughlett, Oklahoma City, OK, for Appellee.

KAUGER, J.:

¶1 We retained this cause to determine whether pursuant to 74 O.S. Supp.1997 § 1366(B),[1] 74 O.S. Supp.1992 § 1372[2] and

1. Title 74 O.S. Supp.1997 § 1366(B) provides:

"The Council shall interpret the plan and decide any matters arising thereunder and may adopt such rules and procedures as it deems necessary, desirable or appropriate in the administration of the plan subject to the Administrative Procedures Act. All rules and decisions of the Council shall be uniformly and consistently applied to all participants in similar circumstances and shall be conclusive and binding on all persons having an interest in the plan. When making any decision or determination, the Council shall be entitled to rely upon such information as may be furnished to it by a participant, a participating employer, legal counsel, third party administrator or the management of any individual benefit plan which is incorporated in the plan."

2. Title 74 O.S. Supp.1992 § 1372 provides in pertinent part:

"The Council shall be responsible for making all determinations as to the rights of any par-

OAC 87:1–5–10 (1994) [3] an insured, who has not received full payment for disputed medical expenses, must exhaust administrative remedies before filing a bad faith suit in district court.[4] Title 74 O.S. Supp.1992

ticipant or any beneficiary of a participant to receive amounts under the plan except to the extent a benefit plan provides to the contrary. The Council may prescribe forms and procedures for making claims for benefits under the plan to the extent such forms or procedures are not prescribed by the terms of a benefit plan. Each person making a claim for benefits under the plan shall also furnish the Council with such documents, evidence, data or information in support of such claim as the Council considers necessary or desirable. If any claim for benefits under the plan is wholly or partially denied, the claimant shall be given notice in writing of such denial within a reasonable period of time, but no later than forty-five (45) days after the claim is filed. Such notice shall set forth the following information:

1. The specific reason or reasons for the denial;
2. Specific reference to pertinent plan provisions on which the denial is based;
3. A description of any additional materials or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
4. An explanation that a full and fair review by the Council of the decisions denying the claim may be requested by the claimant or his or her authorized representative by filing with the Council, within ninety (90) days after notice of denial has been received, a written request for such hearing ..."

3. OAC 87:1–5–10 (1994) providing in pertinent part:

"(a) The Council shall determine the rights of any participant or beneficiary under the Basic Plan or any other plan offered by the Council, except to the extent that a benefit plan provides to the contrary....
(c) Participants covered by the plans of the Board shall use the Board's grievance procedure.
(d) The Council may contract with one or more health maintenance organizations, insurance companies, or other agencies to provide benefits to a participant. If a benefit plan provides for a specific grievance process, the procedure for that benefit plan shall be used.
(e) The Council shall make the final determination as to whether provider plans are being administered consistently with the provisions of the Council's Basic Plan or as otherwise contracted....
(f) All providers of any benefit offered by the Council shall process claims promptly. If any claim for benefits under the Flexible Benefits Plan is wholly or partially denied, the claimant shall be given notice in writing no later than

forty-five (45) days after the claim is filed. The notice shall include the following information: ... (4) An explanation that a full and fair review of the decision denying the claim may be requested in writing within ninety (90) days and with whom such request shall be filed....
(g) The request for review from a denial by a plan provider or for original review by the Council shall be mailed or delivered to the Executive Director at the address given in subchapter 3 of this chapter.
(h) In the event a denial by a plan provider is appealed to the Council, the plan provider shall promptly forward all materials and information used in its review to the Council. A review of a denial by a plan provider with an internal grievance procedure shall be reviewed by the Council based on the record of the plan provider grievance procedure...."

4. In *Williams v. HealthAmerica*, 41 Ohio App.3d 245, 535 N.E.2d 717, 720 (1987), the Ohio court found that an HMO's failure to provide an insured with full information as to its grievance procedure in response to an initial complaint could be considered as evidence of the HMO's bad faith course of conduct. It does not appear that the HMO here informed Davis in its denial letter that he could appeal its decision either to its internal board or to the Benefits Council as required by 74 O.S. Supp.1992 § 1372, see note, supra, and OAC 87:1–5–10 (1994), see note, supra.

Recent legal developments concerning HMOs (health maintenance organizations) and the health insurance industry are discussed extensively in *Walker v. Group Health Serv., Inc.*, 2001 OK 2, —— P.3d ——, 2001 WL 38702 also promulgated today. The controlling issue in *Walker* and the one presented here are identical-whether state employees may recover for bad faith breach of an insurance contract without first exhausting administrative remedies. Because all state employees are not governed by the same statutory scheme when insurance coverage is at issue and because Davis has not received payment for the contested medical expenses, *Walker* is not dispositive. Nevertheless, its analysis is applicable and instructive.

As recognized by the insurer, the statutory scheme in *Walker*—the Oklahoma State & Education Employees Groups Insurance Act [Insurance Act], 74 O.S.1991 § 1301, *et seq.*—and the Benefits Act at issue here are substantially similar. Both acts provide for an administrative review process.

After acknowledging in *Walker* that a state employee may sue a health maintenance organization for bad faith breach of the insurance contract, this Court held that the authority of the administrative body responsible for review under the Insurance Act was limited to matters involving the allowance and payment of claims, eligi-

§ 1372 [5] and OAC 87:1–5–10 (1994) [6] require HMOs denying claims to advise insureds of the right of appeal and the name of the entity from whom review may be requested. Because the HMO did not inform the insured of review or appeal rights in its denial letter,[7] we hold that, under the unique facts of this cause, an insured, who has not pursued administrative remedies, may file a bad faith action in district court.

## FACTS

¶2 The appellee, GHS Health Maintenance Organization, Inc. d/b/a/ BlueLincs, Inc. (insurer/HMO), contracted with the State of Oklahoma to provide insurance coverage to state employees and their dependents. In 1996, while working for the Oklahoma Department of Transportation, the appellant, Bill J. Davis (insured/Davis), chose to enroll himself and his wife as members of the HMO under the Oklahoma State Employees Benefits Act (Benefits Act), 74 O.S. Supp.1992 § 1361, *et seq.*

¶3 As a result of a severe diabetes condition, Davis suffers from organic impotence. The insured asserts that he chose coverage with the HMO based on assurances that an inflatable penile implant procedure fell within his plan. Davis underwent surgery on August 19, 1997, believing that he had been approved for the surgery.[8]

¶4 Although it appears that the HMO paid the surgeon and the anesthesiologist who performed the procedure,[9] Davis received a collection letter in November, 1998, indicating that the hospital bill had not been satisfied. Initially, Davis states that BlueLincs informed him that coverage had been denied because of an invalid pre-certification number and the failure to obtain the HMO's doctor's or director's signature on the referral authorization. On January 12, 1999, Davis wrote BlueLincs demanding that they forward $9,072.87 to the collection agency in payment of the hospitalization charges. BlueLincs responded with a form letter on January 16, 1999, stating that "[t]he services rendered are not a benefit of your health plan. This is your responsibility." Although the letter contains telephone numbers where further questions may be directed, it does not give any information on the possibility of review or appeal of the denial.

¶5 On February 1, 1999, in his first amended petition, Davis filed suit in district court for fraud, constructive fraud and breach of the implied covenant of good faith and fair dealing. Alleging that Davis had not exhausted the administrative procedures imposed by the HMO's internal grievance procedure and the Benefits Act, the HMO moved for dismissal on March 15, 1999. Initially, the trial judge, Honorable Niles Jackson, overruled the motion. However, the HMO filed a motion to reconsider which was sustained on March 22, 2000, and the matter was dismissed on "jurisdictional grounds."

---

bility for coverage and provision of services. Therefore, claims for bad faith were not subject to administrative exhaustion requirements. Under the facts of *Walker*—where the insured had received payment for disputed medical expenses—exhaustion of administrative remedies was not a prerequisite to pursuing the bad faith claim in district court because the insured had already received the only relief he would be entitled to from the administrative review process.

5. Title 74 O.S. Supp.1372, see note, supra.

6. OAC 87:1–5–10 (1994), see note, supra.

7. The denial letter is a form dated January 1, 1999, and found in the record as Exhibit 6 to Davis' response and brief in opposition to the HMO's motion to dismiss. The only directions given in the letter are as follows:

"... If you have any further questions regarding this, please call our Member Service Department at 918–561–9933 or 800–722–5675...."

8. The record contains a referral authorization allegedly signed by the HMO's physician reviewer on August 1, 1997. However, the referral authorization lists as the requested service/procedure "Malleable Penile Prothesis." See, Exhibit 4 to Davis' response and brief in opposition to the HMO's motion to dismiss. Davis contends that the procedure was approved at least four other times before he sought surgery.

9. The insured's brief in chief provides in pertinent part at p. 4:

"... Further, both the surgeon and the anesthesiologist on this procedure have apparently been paid for their services...."

The HMO does not confirm this allegation or deny that the payments were made.

On July 5, 2000, we retained the cause, and the court ordered briefing cycle was completed on August 29, 2000.

### I.

¶ 6 **TITLE 74 O.S. SUPP.1992 § 1372 AND OAC 87:1–5–10 (1994) LIMIT ADMINISTRATIVE REVIEW TO CLAIMS FOR BENEFITS. THE STATUTORY AUTHORITY OF THE BENEFITS COUNCIL DOES NOT EXTEND TO CLAIMS FOR BAD FAITH.**

¶ 7 The insured contends that the grievance procedures contained in the Benefits Act are not exclusive and that they do not require exhaustion before instituting an action for bad faith breach of an insurance contract. Additionally, Davis maintains that the HMO has adopted grievance procedures which clearly do not require exhaustion before proceeding in district court. The HMO maintains that the Benefits Act contains comprehensive, mandatory and binding administrative procedures broad enough to encompass tort actions.[10] Because Davis did not pursue administrative remedies, the insurer argues that the district court "lacked jurisdiction."

¶ 8 Recognizing the individual needs of state employees,[11] the Legislature enacted the Benefits Act creating the Oklahoma State Employees Benefits Council (Benefits Council) to establish and administer the flexible benefits plan.[12] The Benefits Act was passed with the purpose of providing state employees and their dependents with optional employee benefits including enhanced health insurance coverage, health maintenance organization services, life insurance, dental insurance and enhanced long-term disability insurance.[13]

¶ 9 The HMO relies primarily on the language of 74 O.S. Supp.1997 § 1366(B) for the proposition that the Benefits Council has jurisdiction to determine issues of bad faith and that exhaustion of administrative remedies is a prerequisite to filing suit in district court. The statute provides:

> **"The Council shall interpret the plan and decide any matters arising thereunder** and may adopt such rules and procedures as it deems necessary, desirable or appropriate in the administration of the plan subject to the Administrative Procedures Act. All rules and decisions of the Council shall be uniformly and consistently applied to all participants in similar circumstances and **shall be conclusive and binding on all persons having an interest in the plan.** When making any decision or determination, the Council shall be entitled to rely upon such information as may be furnished to it by a participant, a participating employer, legal counsel, third party administrator or the management of any individual benefit plan which is incorporated in the plan." [Emphasis supplied by the HMO.]

The insurer contends that the Legislature's use of the term "any matters" is sufficiently broad to cover bad faith claims and that the statute mandates not only that the Council determine all issues relating to claims but that the Council's decisions "shall be conclusive."[14]

---

10. Neither the Benefits Council nor the Insurance Board filed briefs on appeal. In an *amicus* brief filed in the district court, the two entities assert that their jurisdiction is broad enough to include both claim determination and matters of bad faith. However, they do not indicate that bad faith actions have been presented to them in the past or that they have jurisdiction to award tort damages. The brief, filed on January 7, 2000, provides in pertinent part:

> "... EBS and OSEEGIB strongly reassert the primacy and exclusivity of their jurisdiction over claims by state employees against HMOs under contract with the agencies, expressly including claims relating to coverage and alleged bad faith...."

11. Title 74 O.S. Supp.1997 § 1362.

12. Title 74 O.S. Supp.1999 §§ 1364 and 1365.

13. Title 74 O.S. Supp.1997 § 1362(4).

14. The use of "shall" generally signifies a legislative command. *United States Through Farmers Home Admin. v. Hobbs*, 1996 OK 77, ¶ 7, 921 P.2d 338; *State ex rel. Macy v. Freeman*, 1991 OK 59, ¶ 8, 814 P.2d 147; *Forest Oil Corp. v. Corp. Comm'n*, 1990 OK 58, ¶ 26, 807 P.2d 774. Nevertheless, the term can be permissive. *Minie v. Hudson*, 1997 OK 26, ¶ 7, 934 P.2d 1082; *Texaco, Inc. v. City of Oklahoma City*, 1980 OK 169, ¶ 9, 619 P.2d 869.

¶ 10 We agree that the Legislature's use of the word "any" within a statute may be equivalent to the term "all."[15] However, when ascertaining legislative intent, relevant provisions of a statutory scheme are considered together in an attempt to give force and effect to each provision.[16] Further, when a special statute clearly includes the matter in controversy, the special statute controls over a statute of general applicability.[17] Finally, legislative intent and purpose may be ascertained from the title of an enactment.[18]

¶ 11 In isolation, the language of § 1366(B) affords the Benefits Council broad powers in relation to determinations associated with the flexible benefits plan. However, there is a more specific reference within the statutory scheme relating to claims procedures. The editorial title of § 1372 of the Benefits Act reads: "Claims for benefits—Notice of denial—Request for explanation—Hearing." The statute speaks directly to a participant's claim for benefits providing in pertinent part that:

> "The Council shall be responsible for making all determinations as to the rights of any participant or any beneficiary of a participant to receive amounts under the plan except to the extent a benefit plan provides to the contrary. The Council may prescribe forms and procedures for **making claims for benefits** under the plan to the extent such forms or procedures are not prescribed by the terms of a benefit plan. Each person **making a claim for benefits** shall also furnish the Council with such documents, evidence, data or information in support of such claim as the Council considers necessary or desirable. If **any claim for benefits** under the plan is wholly or partially denied, the claimant shall be given notice in writing of such denial within a reasonable period of time ..." [Emphasis suppled.]

¶ 12 The Council has also adopted a legislatively authorized rule [19]—OAC 87:1-5-10 (1994) entitled "claims procedure." The rule tracks the language of § 1372 specifically governing the administrative review process for resolving an insured's claim. Like it's statutory counterpart, it provides that the Council will review any "claim for benefits" wholly or partially denied.[20]

¶ 13 Section 1372 and OAC 87:1-5-10 (1994) are specific statutes governing the precise matter in controversy—the issues subject to the Benefit Council's administrative review. The specific directives of § 1372 and OAC 87:1-5-10 (1994) govern over the general grant of power denominated in 74 O.S. Supp.1997 § 1366(B). Clearly, both the statute and the administrative rule, place claims for insurance benefits squarely within the province of the Benefits Council. However, neither the statute nor the rule authorize the Benefits Council to address bad faith claims or to award damages appropriate to tort actions. Administrative construction of a statute by an agency charged with its implementation and enforcement is given persuasive effect.[21]

**15.** *State ex rel. Porter v. Ferrell*, 1998 OK 41, ¶ 9, 959 P.2d 576.

**16.** *Ashby v. Harris*, 1996 OK 70, ¶ 11, 918 P.2d 744; *Haney v. State*, 1993 OK 41, ¶ 5, 850 P.2d 1087; *Naylor v. Petuskey*, 1992 OK 88, ¶ 4, 834 P.2d 439.

**17.** *Tulsa County Deputy Sheriff's Fraternal Order of Police, Lodge No. 188 v. Board of County Comm'rs of Tulsa County*, 1998 OK 44, ¶ 13, 959 P.2d 979; *Carter v. City of Oklahoma City*, 1993 OK 134, ¶ 11, 862 P.2d 77; *State ex rel. Trimble v. City of Moore*, 1991 OK 97, ¶ 30, 818 P.2d 889.

**18.** *Naylor v. Petuskey*, see note 16, supra.

**19.** Title 74 O.S. Supp.1997 § 1366(B), see note, supra. The Legislature may delegate rule making authority to agencies, boards and commissions to facilitate the administration of legislative policy pursuant to the Administrative Procedures Act, 75 O.S.1991 § 250 *et seq.* Administrative rules are valid expressions of lawmaking powers having the force and effect of law. 75 O.S. Supp.1997 § 308.2; *Indiana Nat'l Bank v. State ex rel. Dept. of Human Serv.*, 1993 OK 101, ¶ 13, 857 P.2d 53. Administrative rules, like statutes, are given a sensible construction bearing in mind the evils intended to be avoided. *Oklahoma Alcoholic Beverage Control Bd. v. Burris*, 1980 OK 58, ¶ 13, 626 P.2d 1316, 20 A.L.R.4th 593.

**20.** OAC 87:1-5-10, see note, supra.

**21.** *Schulte Oil Co., Inc. v. Oklahoma Tax Comm'n*, 1994 OK 103, ¶ 4, 882 P.2d 65.

## II.

¶14 **UNDER THE UNIQUE FACTS OF THIS CAUSE, AN INSURED, WHO HAS NOT PURSUED ADMINISTRATIVE REMEDIES, MAY FILE A BAD FAITH ACTION IN DISTRICT COURT.**

¶15 Our determination that the Benefits Council has no authority to determine actions in bad faith does not end the inquiry into the necessity of exhaustion of administrative remedies. The insured argues that because the Benefits Council cannot determine issues of bad faith or award damages associated with the tort, the general requirement of exhaustion of administrative remedies[22] should be excused as futile.[23] The HMO contends that without the Benefit Council's determination that the claim falls within its coverage, it cannot be held liable for bad faith. Because the issue of liability has not been established and because the claim remains unpaid, the insurer argues that Davis is precluded from proceeding in district court.

 ¶16 We agree with the HMO that a determination of liability under the contract is a prerequisite to a recovery for bad faith breach of an insurance contract.[24] We also agree that, generally, when coverage has not been determined through the administrative process, an action in district court for bad faith breach of the insurance contract, would be precluded. Nevertheless, the unique facts of this cause militate against requiring the insured to exhaust either the HMO's internal grievance process or to proceed before the Benefits Council.

¶17 **A. Pursuant to 74 O.S. Supp.1992 § 1372 and OAC 87:1–5–10 (1994), the nature of review before the Benefits Council differs between HMOs which have adopted an internal grievance procedure and those which have not. Nevertheless, once a claim is denied the HMO is required to give written notice of the right of review and information regarding the party with whom the request should be filed.**

 ¶18 Both 74 O.S. Supp.1992 § 1372[25] and OAC 87:1–5–10 (1994),[26] contemplate that HMOs may adopt their own grievance procedures providing that the Benefits Council shall be responsible for determining rights under the plan "except to the extent that a benefit plan provides to the contrary." Pursuant to the authority of the statute and the administrative rule, the HMO adopted a grievance process which is outlined in the *Member Handbook (Handbook).*

¶19 Insureds whose HMOs have adopted internal procedures similar to the one at issue here have two opportunities for review—first with the HMOs appeals body and second before the Benefits Council. In both instances, the insured is entitled to written notice from the HMO advising of the right of review and the party from whom relief should be sought.[27]

22. *Arbuckle Abstract Co. v. Scott,* 1998 OK 125, ¶15, 975 P.2d 879; *Lone Star Helicopters, Inc. v. State,* 1990 OK 111, ¶6, 800 P.2d 235.

23. *Arbuckle Abstract Co. v. Scott,* see note 22, supra; *Robinson v. State,* 1996 OK 145, ¶6, 916 P.2d 1390; *Lone Star Helicopters, Inc. v. State,* see note 22, supra.

24. We first recognized a cause of action in tort for an insurance company's bad faith refusal to pay a valid insurance claim in *Christian v. American Home Assurance Co.,* 1977 OK 141, 577 P.2d 899. The duty arises from the recognition that a substantial part of the right purchased by an insured is the right to receive policy benefits promptly. *Goodwin v. Old Republic Ins. Co.,* 1992 OK 34, ¶8, 828 P.2d 431; *Christian v. American Home Assurance Co.,* this note, supra.

Indemnity for loss under the contract is the centerpiece of a bad faith action. *Taylor v. State Farm Fire & Casualty Co.,* 1999 OK 44, ¶9, 981 P.2d 1253. See also, *Expertise, Inc. v. Aetna Finance Co.,* 810 F.2d 968, 972 (10th Cir.1987) [A plaintiff must establish that a binding agreement has been breached before invoking the bad faith cause of action.].To bring an action for bad faith, the loss must arise from a valid claim *Taylor v. State Farm Fire & Casualty Co.,* this note, supra.

25. Title 74 O.S. Supp.1992 § 1372, see note 2, supra.

26. OAC 87:1–5–10 (1994), see note 3, supra.

27. Title 74 O.S. Supp.1992 § 1372, see note 2, supra; OAC 87:1–5–10 (1994), see note 3, supra.

¶ 20 Review of claims denied in whole or in part are handled differently when an HMO has instituted grievance procedures and when it has not. Insureds seeking review before the Benefits Council whose HMOs do not have an internal grievance procedure are entitled to a full evidentiary-type hearing.[28] Parties may be represented by counsel.[29] The Hearing Examiner rules on the admissibility of evidence, administers oaths to witnesses and may issue subpoenas *duces tecum or* for witnesses. Further, parties are entitled to request full stenographic records by a certified court reporter.[30] In contrast, where the HMO has an internal process, the Benefit Council's review is limited to review based on the record of the plan provider grievance procedure.[31]

¶ 21 Nevertheless, all HMOs must notify their insureds of the denial of a claim within forty-five (45) days of the claim's filing. If the HMO has adopted an internal grievance procedure, 87:1–5–10 requires that the HMO advise the insured "with whom such request shall be filed", i.e. the internal review board. If the HMO has not adopted its own review processes, 74 O.S. Supp.1992 § 1372 requires that the denial contain "an explanation that a full and fair review by the Council of the decision denying the claim may be requested ... with the Council." An HMO with an internal review process may be required to give notice to its insured twice—if the claim is denied initially, it must advise its insured

of the right to appeal and the party with whom the request must be filed; if the claim is denied during the internal review, the HMO must give the insured written notice delineating the rights of appeal before the Benefits Council.

¶ 22 **B. Although both 74 O.S. Supp.1992 § 1372 and OAC 87:1–5–10 (1994) require HMOs denying claims to advise insureds of the right of appeal and the name of the entity from whom review may be requested, the HMO did not inform the insured of review or appeal rights in its denial letter.**

¶ 23 Title 74 O.S. Supp.1992 § 1372 and OAC 87:1–5–10 (1994) provide that if any claim for benefits is wholly or partially denied, the insured "shall be given" written notice. In the language of § 1372, the notice "shall set forth" an explanation that a full and fair review of the decision denying the claim may be requested before the Benefits Council. OAC 87:1–5–10 (1994) uses similar language but requires that the notice "shall include" "an explanation that a full and fair review of the decision ... may be requested ... and with whom such request shall be filed." Statutorily required notice is required where the failure to give such notice results in prejudice.[32]

¶ 24 The statute and the rule direct[33] the HMO to provide the insured written informa-

---

**28.** OAC 87:1–5–13 (1994) provides in pertinent part:

"(a) The Council follows the provisions of Article II of the Administrative Procedures Act, Sections 309 through 323 of Title 75 of the Oklahoma Statutes, and this Chapter. The Council or a person named as the Hearing Examiner shall conduct hearings....
(d) Rulings on admissibility of evidence shall be made by the Council Chairperson or Hearing Examiner.... The agency may admit and give effect to documents, testimony, and other evidence which tend to prove or disprove facts as commonly accepted....
(e) The Chairperson or Hearing Examiner shall have the authority to administer oaths; and the Executive Director or designated Hearing Examiner for the Council shall have the authority to issue subpoenas for witnesses or subpoenas duces tecum to compel the production of books, records, papers and other objects....

(g) Any party may request a full stenographic record of the proceedings be made by a certified court reporter...."

**29.** OAC 87:1–5–14 (1994) provides in pertinent part:

"In an individual proceeding, any party has the right to have an attorney who is licensed to practice law by the Oklahoma Supreme Court...."

**30.** OAC 87:1–5–13 (1994), see note 28, supra.

**31.** OAC 87:1–5–10(h) (1994), see note 3, supra.

**32.** See, *Moore v. Tom Morris Enterprises*, 1976 OK 25, 547 P.2d 966; *Correll v. Shepherd*, 1924 OK ——, ¶ ——, 102 Okla. 11, 227 P. 874.

**33.** Although the term shall "shall" can be permissive [*Minie v. Hudson*, see note 14, supra; *Fuller v. Odom*, 1987 OK 64, ¶ 4, 741 P.2d 449; *Darnell v. Chrysler Corp.*, 1984 OK 57, ¶ 5, 687

tion of the right of appeal. The rule goes further, specifically providing that the HMO shall advise the insured with whom the appeal must be lodged. The notice given Davis wholly fails the mandates of the statute and the rule. The insured was provided a form letter indicating that his claim had been denied. Although it contained telephone numbers to which further questions might be directed, it provided no information on the appeals process available either through the HMO or the Benefits Council.[34] By engaging an attorney and proceeding in district court, the insured has incurred legal expenses. A finding that the HMO was under no duty to provide the mandated notice would not only contradict the language of 74 O.S. Supp.1992 § 1372 and OAC 87:1–5–10 (1994), it would prejudice the insured's right to proceed with his bad faith claim and ignore the fact that the lack of notice may have resulted in Davis' incurring unnecessary legal expenses.

¶ 25 Although the notice issue was not artfully argued, the question was raised in the trial court and on appeal.[35] Nevertheless, when public law issues are presented, the Court may, on review, resolve them by application of legal theories not tendered below.[36] We take judicial notice of public policy established through statutory enactments,[37] and we are constrained to take into consideration rules promulgated pursuant to the Administrative Procedures Act.[38] Here, both 74 O.S. Supp.1992 § 1372 and OAC 87:1–5–10 (1994) mandate that an insured be given written notice of the right of appeal and of the entity who must be contacted to guarantee review. Failure to give the statutorily mandated and rule provided notice excuses the generally mandated exhaustion requirements.

¶ 26 Further, when public law issues are involved we have addressed matters dispositive of a cause *sua sponte*.[39] The declared purpose of the Benefits Act is to provide state employees and their dependents with optional employee benefits, including health maintenance organization services.[40]

P.2d 132], it ordinarily signifies a command. *United States Through Farmers Home Admin. v. Hobbs*, see note 14, supra; *State ex rel. Macy v. Freeman*, see note 14, supra; *Forest Oil Corp v. Corp. Comm'n*, see note 14, supra.

**34.** See note 9, supra.

**35.** Davis' response and brief in opposition to the HMOs motion to dismiss filed on April 2, 1999, provides in pertinent part at p. 4:
"... In fact, Mr. Davis submitted several complaints to his HMO and was never directed, instructed or confined by the Defendant to this grievance process...."
Davis' brief in chief, filed on July 27, 2000, provides in pertinent part at p. 9:
"... In fact, Mr. Davis submitted several complaints to his HMO and was never directed, instructed or confined by the Defendant to this grievance process or to the EBC...."
*Markwell v. Whinery's Real Estate, Inc.*, 1994 OK 24, 869 P.2d 840 [Rules of pleading both at the trial and the appellate levels have been liberalized to allow courts to focus attention on substantive merits of the dispute rather than upon procedural niceties.].

**36.** *In re Initiative Petition No. 349*, 1992 OK 122, ¶ 4, 838 P.2d 1; *Matter of McNeely*, 1987 OK 19, ¶ 4, 734 P.2d 1294.

**37.** *Huber v. Culp*, 1915 OK 366, 149 P. 216. Title 12 O.S.1991 § 2201 provides in pertinent part:
"A. Judicial notice shall be taken by the court of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States...."

**38.** Title 75 O.S.1991 § 252 provides in pertinent part:
"... All courts, boards, commissions, agencies, authorities, instrumentalities, and officers of the State of Oklahoma shall take judicial or official notice of any rule, amendment, revision, or revocation of an existing rule promulgated pursuant to the provisions of the Administrative Procedures Act...."
*Cox v. Dawson*, 1996 OK 11, ¶ 18, 911 P.2d 272; *Butler v. Oklahoma Horse Racing Comm'n*, 1994 OK 50, ¶ 1, 874 P.2d 1278; *Lone Star Helicopters, Inc. v. State*, 1990 OK 111, ¶ 4, 800 P.2d 235.

**39.** See, *First Federal Savings & Loan v. Nath*, 1992 OK 129, ¶ 11, 839 P.2d 1336; *Burdick v. Independent School Dist. No. 52*, 1985 OK 49, ¶ 10, 702 P.2d 48.

**40.** Title 74 O.S. Supp.1997 § 1362 provides in pertinent part::
"It is hereby declared that the purpose of Section 1361 et sq. of this title is:
... (4) To provide state employees and their dependents with optional employee benefits, to include, but not be limited to, enhanced health insurance coverage, health maintenance orga-

**1213**

The general policy concerns relating to HMO law as it has developed in the courts and in the state and national legislative bodies is outlined in *Walker v. Group Health Services, Inc.,* 2001 OK 2, ¶¶ 7–11, —— P.3d ——, 2001 WL 38702 also promulgated today. The cause presents an issue sufficiently infused with public concerns to merit review on the statutorily mandated and administratively required notice issue. `

¶ 27 If in the course of post-remand proceedings the trial court should conclude that the *controversy* over the amount of benefits due the insured *remains unsettled* and be requested that the doctrine of primary jurisdiction be invoked to allow some issues in this case, which are within the agency's authority and expertise, to be resolved there, today's pronouncement would pose *no* barrier to the lower court's exercise of sound discretion in its ordered deference to an agency's determination of some issues that are within the limits of the latter's statutory powers.

## CONCLUSION

¶ 28 Clearly, both 74 O.S. Supp.1992 § 1372 [41] and OAC 87:1–5–10 (1994),[42] place claims for insurance benefits squarely within the province of the Benefits Council. However, neither the statute nor the rule authorize the Benefits Council to address bad faith claims or to award damages appropriate to tort actions. Therefore, we hold that bad faith claims do not fall within the province of the administrative review process encompassed by the Oklahoma State Employees Benefits Act (Benefits Act), 74 O.S. Supp. 1992 § 1362, *et seq.* Further, under the unique facts of this cause—where the insurer has failed to advise its insureds of the right of appeal and the name of the entity from whom review may be requested—, we determine that failure to exhaust administrative remedies does not bar an insured from filing a bad faith action in district court.

¶ 29 Our determination that exhaustion is excused in the instant cause is not intended to undermine the primary authority of the Benefits Council to address issues involving payment for medical expenses. Rather, it is limited to the facts presented.

## REVERSED AND REMANDED.

HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, OPALA,, BOUDREAU, WINCHESTER, JJ., concur.

SUMMERS, J., concurs in result.

nization services, life insurance, dental insurance and enhanced long-term disability insurance …"

41. Title 74 O.S. Supp.1992 § 1372, see note, supra.

42. OAC 87:1–5–10 (1994), see note, supra.