## Atlantic Refining Company Case.

Argued November 16, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*Regis C. Nairn,* Assistant City Solicitor, with him *Edmund W. Ridall, Jr.,* Assistant School Solicitor, *Niles Anderson,* School Solicitor, and *David Stahl,* City Solicitor, for appellants.

*Elder W. Marshall,* with him *Robert A. Rundle, George I. Minch, Roy W. Johns,* and *Wright & Rundle,* and *Reed, Smith, Shaw & McClay,* for appellee.

*C. William Campbell*, and *Campbell, Casteel & Thomas*, for amicus curiae.

*Brady O. Bryson, Thomas V. Lefevre*, and *Morgan, Lewis & Bockius*, for amicus curiae.

*Elder W. Marshall, Carl E. Glock, Jr., Frank W. Ittel*, and *Reed, Smith, Shaw & McClay*, for amicus curiae.

*Alan D. Riester*, and *Brandt, Riester, Brandt & Malone*, for amicus curiae.

OPINION BY MR. JUSTICE COHEN, December 30, 1959:

The Act of June 25, 1947, P.L. 1145, as amended, 53 P.S. §6851[1] and the Act of June 20, 1947, P.L. 745, as amended, 24 P.S. §582.1[2] enable the City of Pittsburgh and the School District of Pittsburgh to impose mercantile taxes on vendors or dealers of goods,

---

[1] "Section 1. A. Delegation of Taxing Powers and Restrictions Thereon—The duly constituted authorities of the following political subdivisions, cities of the second class, cities of the second class A, cities of the third class . . . may . . ., levy, assess and collect or provide for the levying, assessment and collection of such taxes . . . on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions, except that such local authorities shall not have authority by virtue of this act . . . (4) to levy, assess and collect a tax . . . on any privilege, act or transaction related to the business of manufacturing, . . ., or on any privilege, act or transaction relating to the business of processing by-products of manufacture . . . ."

[2] "Section 1. Definitions.—The following words and phrases when used in this act shall have the meanings ascribed to them in this section unless the context clearly indicates a different meaning. . . . (4) 'Dealer in, or vendor of, goods, wares and merchandise' shall not include any mechanic who keeps a store or warehouse at his place of manufactory or workshop in which he sells only his own manufactures, any person vending or disposing of articles of his own growth, produce or manufacture, or any hawker or peddler licensed under any law of this Commonwealth."

wares and merchandise measured by their gross receipts from sales within the city and school district. The former act forbids the city to tax "any privilege, act, or transaction related to the business of manufacturing . . . or . . . of processing by-products of manufacture . . ." and the latter act also forbids a school district to tax any person "vending or disposing of articles . . . of his own growth, produce or manufacture."

The appellee, Atlantic Refining Company, sold within the School District and the City of Pittsburgh merchandise which included, inter alia, products of its refineries located in Philadelphia and elsewhere such as: gasoline, naptha, kerosene, motor oils, lubricating oils, fuel oils, waxes, detergents and greases. In 1957, the Treasurer of the City and School District assessed against appellee for the years 1952, through 1956, mercantile taxes based on sales of appellee's products with the exception of greases and products made from its own production of crude oil. These assessments were sustained by the Treasurer on review, but, on appeal to the County Court of Allegheny County, were held to be invalid because these products were "manufactured" by the appellee. From this decision, the City and School District have taken these appeals.

The sole issue is whether the refining of oil is "manufacturing" within the meaning of the above-quoted exceptions.

The Statutory Construction Act of May 28, 1937, P.L. 1019, Art. III, §33, 46 P.S. §533, provides that "words and phrases should be construed according to rules of grammar and according to common and approved usage." In *Gulf Oil Corporation v. Philadelphia*, 357 Pa. 101, 53 A. 2d 250 (1947), this Court held that certain tanks used in oil refinery were within the provisions of the Act of June 3, 1915, P.L. 787,

53 P.S. §4742 which exempted "machinery used in manufacturing" from real estate tax. While in *Gulf Oil* there is nothing that indicates that the question whether refining is "manufacturing" was specifically raised and argued, it serves as an excellent example of how this process had been viewed by this Court in prior cases. In that case, at page 102, this Court stated: "Appellant is a Pennsylvania corporation engaged in the *manufacture* of gasoline and various petroleum products from a Philadelphia refinery." (Emphasis supplied). Still further, at page 106, it was said again that "these tanks are part of the machinery used in *manufacturing*." (Emphasis supplied). In *Commonwealth v. National Oil Company, Limited*, 157 Pa. 516, 27 Atl. 374 (1893), the court held that capital employed by a company in oil refining was exempt from the capital stock tax as assets used in manufacturing. In that case, the Commonwealth did not dispute that oil refining was manufacturing; this is a further example of the common assumption that refining is a manufacturing process.

The taxing authorities argue that petroleum is simply a mixture of liquids and that the task of the refinery is merely to separate these liquids from each other. There was ample evidence and findings of the court below that the appellee's factory creates hundreds of products in other materials and each product is new in physical and chemical qualities and also in their function and use, with the resultant difference in their commercial acceptance. The appellants answered the arguments by saying that the processes used by appellee are not manufacturing since the products themselves are all present in the crude oil and are but "fractioned" or separated. It is apparent that practically any operation could not be classified as manufacture if we were to adopt appellants' argument.

Making furniture from raw wood, making suits from bolts of cloth, and making bags out of paper would not be manufacture under the definition used by appellants. Their contention is that no change takes place in the basic structure of the raw material. However, it is elementary to point out that this could be said of practically any form of manufacturing since the primary structure of the raw materials remains the same.

Our only concern here is whether or not the legislature intended to exclude oil refining from these taxes. The purpose of the exclusion is an economic one in that it provides that Pennsylvania manufacturers should not be burdened with an additional tax on their products since such products have to compete with products of other states in an open market. The terminology in question here is only of significance because its function distinguishes the manufacturing from the non-manufacturing. Common usage and custom plus the reason for the exception leads us to the only logical conclusion that "manufacturing" includes "refining" as contemplated by the legislature in enacting the Acts of 1947.

Order affirmed.