**LONE STAR HELICOPTERS, INC.**, a Texas corporation, Plaintiff–Appellant,

v.

**The STATE of Oklahoma, The Oklahoma Teaching Hospitals, The Oklahoma Department of Human Services and The State Board of Public Affairs, Defendants–Appellees.**

No. 70414.

Supreme Court of Oklahoma.

Oct. 23, 1990.

Darryl F. Roberts, Roberts, Burns & Delashaw, Inc., Ardmore, for appellant.

Ross N. Johnson, Gen. Counsel, Office of Public Affairs, Oklahoma City, for appellee, Office of Public Affairs.

Charles Lee Waters, Gen. Counsel, Bana Burkett Blasdel, Asst. Gen. Counsel, Dept. of Human Services, Oklahoma City, for appellees, Oklahoma Teaching Hospitals and Dept. of Human Services.

OPALA, Vice Chief Justice.

This certiorari proceeding tenders the following dispositive issue: Is this breach-of-contract action fraught with a fatal remedial impediment because the plaintiff, who was aggrieved by a decision of the Office of Public Affairs, had abandoned the agency's rule-prescribed administrative review process before it reached a "final" decision stage? We answer in the negative and hold that because the administrative remedy in question does not afford the plaintiff adequate relief, the exhaustion-of-remedies doctrine is not invocable as a bar to this action.

The appellant, Lone Star Helicopters, Inc. [plaintiff or Company], sued the State for breach of contract. The State Board of Public Affairs (now known as the Office of Public Affairs),[1] the Oklahoma Teaching Hospitals and the Department of Human Services [collectively called State] are other named parties defendant. The petition alleges the State cancelled its contract with Company after the latter had begun performance, i.e., providing transportation for medical emergencies. Recovery of damages is the action's object.

Before the trial court the State argued want of "jurisdiction" because the plaintiff had failed to exhaust an administrative remedy. The trial court agreed with this analysis and dismissed the case.[2] On appeal, the Court of Appeals reversed the dismissal order because 1) the agency rules upon which the State relies were not made a part of the appellate record and 2) the contract in suit neither refers to nor incor-

---

1. The State Board of Public Affairs has been replaced by the Office of Public Affairs. See 74 O.S.Supp.1983 § 61.2, whose terms provide:
   "There is hereby created in the Executive Department, an Office of Public Affairs, under the administrative control of the Director of Public Affairs. *Whenever the terms "Board of Affairs", "State Board of Public Affairs", or "Board" when used in reference to the Board of Public Affairs, appear in the Oklahoma Statutes they shall mean the Office of Public Affairs* or the Director of Public Affairs as may be appropriate to the context in which they appear." (Emphasis added.)

2. Both the Office of Public Affairs [OPA] and the Department of Human Services [DHS] ar-

gued below that the district court "lacked subject-matter jurisdiction" because the plaintiff failed to exhaust its administrative remedies. OPA presented its argument in a motion to dismiss, while the paperwork tendered by DHS is titled "motion for summary judgment." According to the journal entry, both motions were "sustained" for the reason urged by the two agencies. We hence treat the trial court's disposition of both matters as a dismissal. For other cases in which this court has characterized an order sustaining a motion for "summary judgment" as a dismissal, see *Ingram v. State,* Okl., 786 P.2d 77, 81 (1990); *Hulsey v. Mid–America Preferred Ins. Co.,* Okl., 777 P.2d 932, 936 (1989).

237

porates those rules. We granted certiorari upon the State's petition.

■ The State had awarded the contract to Company pursuant to the Oklahoma Central Purchasing Act (74 O.S.1981 §§ 85.1 et seq.) [Act], which authorizes the Director of Public Affairs[3] to promulgate rules governing, among other things, the submission of service contract bids,[4] the acceptance or rejection of any service affected by the Act,[5] and "[a]ny other matter or practice which is directly related to his responsibilities...."[6] The Purchasing Director[7] is required by statute to publish the rules.[8] These rules are matters of public record and need not have been incorporated into the record for review. We *must* take judicial notice of them.[9]

The publication to which the State refers us is titled, "How to Sell to the State of Oklahoma" (rev. March 1987).[10] Part X provides that *"any decision* rendered by Central Purchasing *may be appealed* by submission of a written request for review." (Emphasis added.) Aggrieved by the State's cancellation of its helicopter service contract, Company invoked this administrative review process. Before the agency's final decision Company abandoned its quest to obtain administrative relief *for want of an adequate remedy.* Its damage suit followed.

■ Exhaustion of an administrative remedy is generally a prerequisite for resort to the courts,[11] but the doctrine will not bar a district court action that bypasses the agency's own rule-prescribed mode for processing a complaint *if the administrative remedy is unavailable, ineffective or would be futile to pursue.*[12] Should an aggrieved party bring a lawsuit when adequate administrative relief is available, the action is to be viewed as *fraught with a fatal remedial impediment* that bars judicial relief. Although, in its appellate brief, Company does not urge directly that the unavailability of damages makes the existing administrative remedy inadequate, we view this argument as fairly comprised in Company's primary contention that the Office of Public Affairs has *no* authority to resolve the contractual dispute at hand, and that even if it did, the agency lacks power to assess breach-of-contract reparations to Company.

■ According to the rules promulgated by the Office of Public Affairs, damages may be awarded *only to the State.* No

**3.** The Director of Public Affairs is the chief administrator of the defendant, Office of Public Affairs. 74 O.S.Supp.1983 § 61.2.

**4.** 74 O.S.Supp.1984 § 85.5(3).

**5.** 74 O.S.Supp.1984 § 85.5(11).

**6.** 74 O.S.Supp.1984 § 85.5(13).

**7.** The Purchasing Director is the administrative head of the Office of Public Affair's Purchasing Division. 74 O.S.Supp.1983 § 85.3.

**8.** See 74 O.S.1981 § 85.11, whose pertinent terms provide:
"The Purchasing Director *shall publish such rules* and regulations authorized hereunder as may be practicable at least once each year...." (Emphasis added.)

**9.** 75 O.S.1981 § 252. The pertinent terms of this section, now found in 75 O.S.Supp.1989 § 252(A), provide:
"* * * *All courts,* boards, commissions, agencies, authorities, instrumentalities, and officers of the State of Oklahoma *shall take judicial or official notice of any rule....*" (Emphasis added.) (In § 252's 1981 version, this

statutory directive applies to any rule "duly filed, or duly filed and published under the provisions of this act [75 O.S.1981 §§ 251–255]," while its present terms refer to any rule "promulgated pursuant to the provisions of the Administrative Procedures Act [75 O.S. Supp.1989 §§ 250.1 et seq.].")
We note that the validity of the rules promulgated by the Director of Public Affairs has not been questioned.

**10.** There is no dispute that the administrative remedy in question is delineated in the March 1987 version of the agency's publication.

**11.** *Sanders v. Oklahoma Employment Security Commission,* 200 Okl. 366, 195 P.2d 272, 273 (1948) (the court's syllabus ¶ 3); *Speaker v. Board of County Commissioners,* Okl., 312 P.2d 438, 439 (1957) (the court's syllabus ¶ 1).

**12.** *Martin v. Harrah Independent School District,* Okl., 543 P.2d 1370, 1372 (1976); *Lincoln Income Life Insurance Co. v. Wood,* Okl., 556 P.2d 602, 604 (1976); *Allen v. Retirement Sys. For Just. & J.,* Okl., 769 P.2d 1302, 1307 (1988). See also, 4 Davis, Administrative Law Treatise § 26:11 at 464 (2d ed. 1983).

provision affords vendors an opportunity to obtain the same redress against the State.[13] Clearly, then, the administrative review process does not provide an adequate avenue of relief to the plaintiff for resolution of this dispute.[14] Although the rules may have been broad enough to provide Company some form of relief from the effect of an unlawful or unauthorized contract termination,[15] we hold that the exhaustion-of-remedies doctrine is not invocable as a bar to the instant action for recovery of damages from breach of contract.[16]

The State had urged that the trial court's dismissal order should be affirmed because, at the time this action was filed, Company was prohibited by the terms of 18 O.S.Supp.1987 § 1137(A)[17] from maintain-

**13.** See "How to Sell to the State of Oklahoma," (rev. 1987) at 8–9, whose pertinent parts are as follows:

"VIII. Performance by Successful Bidder
" * * *
D. Termination or Recision of Contract by State and Compensation for Damages.
1. *The State of Oklahoma shall have the right to terminate or rescind any contract entered into under these Rules* and Regulations in the following instances:
(a). Failure to post satisfactory performance bond when so required.
(b). Failure to make prompt delivery to the proper location.
(c). Failure to promptly replace non-conforming goods after notice of rejection.
(d). Substantial misrepresentation of vendor ability of goods offered to the extend [sic] that the ability of the vendor to competently do business with the State is in question.
(e). Any breach or unlawful act by the vendor which substantially impairs the ability of the vendor to perform or substantially impairs the value of the contract to the State.
* * * * * *
3. *The damages for which the State shall hold the vendor responsible* in the case of termination of a contract shall include, but not be limited to the following:
(a). Additional cost of commodities obtained elsewhere;
(b). Cost of re-bidding the purchase;
(c). Expenses incurred from delay in receipt of deliveries;
(d). Any other damages caused by the vendor's breach or unlawful act.
4. Withholding Monies as Compensation for Damages. If a contract is terminated or rescinded due to the wrongful act or omission of the vendor the State, in addition to other remedies and bonds, withhold [sic] from the unpaid purchase price an amount sufficient to cover damages incurred because of such termination or recision.
* * * " (Emphasis added.)

**14.** See *Mattoon v. City of Norman*, Okl., 617 P.2d 1347, 1350 (1980), where, in the absence of an effective administrative remedy affording the plaintiff compensation, the district court entertained a landowner's action to recover for an alleged governmental taking of his property without due process of law.

Courts in other jurisdictions as well have held administrative remedies inadequate or useless when damages were not recoverable. See, e.g., *Ambassador Insurance Corporation v. Feldman*, 95 Nev. 538, 598 P.2d 630, 630–631 (1979) (exhaustion-of-remedies doctrine posed *no* fatal remedial barrier in a defamation action against insurance companies, where the state's insurance commissioner had no authority to award damages for the alleged wrongdoing); *Murphy v. T.B. O'Toole, Inc.*, 45 Del. 540, 76 A.2d 313, 314–315 (1950) (administrative remedy would not have made damages available to plaintiff and would have been futile to pursue before bringing an action for fraud, since the defendant had used the administrative process to carry out the fraudulent scheme).

**15.** See Part VIII(D)(1)(a)–(e) of "How to Sell to the State of Oklahoma," *supra* note 13.

**16.** For other instances in which this court has held the exhaustion-of-remedies doctrine inapplicable to bar a suit in the district court, see *United Airlines, Inc. v. State Bd. of Equalization*, Okl., 789 P.2d 1305, 1308–1309 (1990), where, in the absence of an administrative avenue for challenging an agency's power to assess ad valorem taxes against the plaintiff-taxpayers, the district court undertook to test the power's existence; *Burdick v. Independent School Dist.*, Okl., 702 P.2d 48, 52–53 (1985), where, in a suit to enjoin one school district from compelling students' attendance in another, the location of plaintiffs' legal residence was undisputed and the controversy centered on a clouded school district boundary line, the court held that neither an agency "residency determination" nor a transfer would have provided an effective administrative remedy.

**17.** The terms of 18 O.S.Supp.1986 § 1137(A) provide:

"*A foreign corporation* which is required to comply with the provisions of Sections 130 and 131 of this act and *which has done business in this state without authority shall not maintain any action* or special proceeding in this state *unless and until such corporation has been authorized to do business in this state and has paid to the state all fees, penalties and franchise taxes* for the years or parts thereof during which it did business in this state without authority. This prohibition shall not ap-

ing any lawsuit. Inasmuch as today's pronouncement deals *solely* with the only narrow issue reached at nisi prius—whether this action is fraught with a fatal remedial infirmity—the remaining issue the State seeks to press on appeal is not now before us. The State may, of course, upon remand reassert in the trial court its lack-of-capacity-to-sue defense.[18]

THE COURT OF APPEALS' OPINION IS VACATED; THE TRIAL COURT'S DISMISSAL ORDER IS REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS.

All Justices concur.

ply to any successor in interest of such foreign corporation." (Emphasis added.)

**18.** The State had earlier moved to dismiss this appeal based on the notion that Company is prohibited by statute (18 O.S.Supp.1986 § 1137(A), *supra* note 17) from maintaining its action. This court denied the motion without prejudice to renewal. In its brief-in-chief the State reasserts the motion, which we now overrule once again.