2004 OK 48

**APACHE CORPORATION,**
Protestant/Appellant,

v.

**STATE of Oklahoma, ex rel. OKLA-
HOMA TAX COMMISSION,**
Respondent/Appellee.

No. 97,907.

Supreme Court of Oklahoma.

June 15, 2004.

Rehearing Denied Oct. 4, 2004.

Philip D. Hart, James Dudley Hyde, Jennifer Henderson Callahan, McAfee & Taft, Oklahoma City, OK, for Petitioner/Appellant.

Douglas B. Allen, General Counsel, Marjorie L. Welch, First Deputy General Counsel, Oklahoma Tax Commission, Oklahoma City, OK, for Respondent/Appellee.

EDMONDSON, J.

¶ 1 Apache Corporation, a producer of oil and gas, purchased equipment and other items that it used at its wells to produce oil, gas, and related hydrocarbons. Apache Corporation (Apache) claims that: (1) It paid sales taxes on these purchases; (2) A sales tax exemption is provided to manufacturers; and (3) Apache is a manufacturer and entitled to a refund from the Tax Commission for the these purchases. Specifically, Apache claims that gas compression, dehydration, and other processes occurring at the well-head amount to a manufacturing process, and any expenditures made as a manufacturing process are entitled to be exempt from a sales tax. The Tax Commission claims that field processing is not "processing" in a manufacturing sense, and that Apache is not entitled to any refund.

¶ 2 Apache's request for refund relates to purchases made between March 1, 1997 and February 29, 2000. The refund was divided into two amounts, $439,506.77 attributable to purchases made before November 1, 1998, and $329,269.63 attributable to purchases made on or after November 1, 1998. The relevant statutes were amended effective November 1, 1998. They were also amended in 2003.

¶ 3 In *Dolese Bros. v. State ex rel. Oklahoma Tax Commission*, 2003 OK 4, 64 P.3d 1093, we explained that, "[a]s a general rule, statutes and statutory amendments will be construed as operating prospectively unless by express declaration or necessary implication from the language used the Legislature clearly demonstrates a contrary intent." *Id.* 2003 OK 4 at ¶ 8, 64 P.3d at 1097. Nothing before us suggests that the 1998 and 2003 amendments apply to all of Apache's sales taxes paid between 1997 and 2000. We must therefore examine Apache's refund in light of the 1997 and 1998 versions of the Oklahoma Sales Tax Code as they apply to taxes paid when each version was in effect.[1] We first apply the 1998 statutes.

¶ 4 Apache claimed the sales tax exemption provided for the "[s]ales of goods, wares, merchandise, tangible personal property, machinery and equipment to a manufacturer for use in a manufacturing operation." 68 O.S.Supp.1998 § 1359(1). Apache sought an exemption based upon its alleged status as a

---

1. Relevant 2003 amendments to § 1352 and 1359 state as follows:

68 O.S.Supp.2003 § 1352(9) & (10):

9. "Manufacturing" means and includes the activity of converting or conditioning tangible personal property by changing the form, composition, or quality of character of some existing material or materials, including natural resources, by procedures commonly regarded by the average person as manufacturing, compounding, processing or assembling, into a material or materials with a different form or use. "Manufacturing" does not include extractive industrial activities such as mining, quarrying, logging, and drilling for oil, gas and water, nor oil and gas field processes, such as natural pressure reduction, mechanical separation, heating, cooling, dehydration and compression;

10. "Manufacturing operation" means the designing, manufacturing, compounding, processing, assembling, warehousing, or preparing of articles for sale as tangible personal property. A manufacturing operation begins at the point where the materials enter the manufacturing site and ends at the point where a finished product leaves the manufacturing site. "Manufacturing operation" does not include administration, sales, distribution, transportation, site construction, or site maintenance. Extractive activities and field processes shall not be deemed to be a part of a manufacturing operation even when performed by a person otherwise engaged in manufacturing;

68 O.S.Supp.2003 § 1359(1):

Exemptions—Manufacturers.

There are hereby specifically exempted from the tax levied by Section 1350 et seq. of this title:

1. Sales of goods, wares, merchandise, tangible personal property, machinery and equipment to a manufacturer for use in a manufacturing operation. Goods, wares, merchandise, property, machinery and equipment used in a nonmanufacturing activity or process as set forth in paragraph 9 of Section 1352 of this title shall not be eligible for the exemption provided for in this subsection by virtue of the activity or process being performed in conjunction with or integrated into a manufacturing operation;

manufacturer. The Tax Commission first claimed that Apache did not follow the proper procedure for obtaining this exemption.

¶ 5 In 1998 a new statute was created, 68 O.S.Supp.1998 § 1359.2, and it requires a manufacturer to obtain a "manufacturer exemption permit" to "qualify for the exemption authorized in paragraph 1 of section 1359...."

A. *In order to qualify for the exemption authorized in paragraph 1 of Section 1359 of Title 68 of the Oklahoma Statutes, at the time of sale, the person to whom the sale is made, provided the purchaser is a resident of this state, shall be required to furnish the vendor proof of eligibility for the exemption as required by this section.* All vendors shall honor the proof of eligibility for sales tax exemption as authorized under this section, and sales to a person providing such proof shall be exempt from the tax levied by Section 1350 et seq. of Title 68 of the Oklahoma Statutes.

B. *Each resident manufacturer wishing to claim the exemption authorized in paragraph 1 of Section 1359 of Title 68 of the Oklahoma Statutes shall be required to secure from the Oklahoma Tax Commission a manufacturer exemption permit,* the size and design of which shall be prescribed by the Tax Commission. This permit shall constitute proof of eligibility for the exemption provided in paragraph 1 of Section 1359 of Title 68 of the Oklahoma Statutes. Each such manufacturer shall file with the Tax Commission an application for an exemption permit, setting forth such information as the Tax Commission may require. The application shall be signed by the owner of the business or representative of the business entity and as a natural person, and, in the case of a corporation, as a legally constituted officer thereof.

68 O.S.Supp.1998 § 1359.2(A) & (B), (emphasis added).

¶ 6 Apache argues that it should not be required to obtain a permit because it learned during this litigation that even if it had timely sought a permit, the Tax Commission would have denied its application. Apache did apply for an exemption permit on April 13, 2000, several days after the period for which it seeks a refund. The record clearly shows that Apache's application for a permit would have been denied. Apache's argument assumes that the permit is part of an administrative remedy to obtain the manufacturer's exemption. The Tax Commission asserts that Apache's failure to obtain, or least attempt to obtain, the permit bars the exemption for a refund of taxes paid on or after November 1, 1998.

¶ 7 Exhaustion of administrative remedies is not required when those remedies are inadequate, ineffective or unavailable. *Dewey v. State ex rel. Oklahoma Firefighters Pension and Retirement System,* 2001 OK 40, ¶ 14, 28 P.3d 539, 546; *McCarthy v. Madigan,* 503 U.S. 140, 146–149, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). We have explained the inadequacy, insufficiency, or futility of an administrative remedy when that remedy did not provide the parties with an opportunity to fairly present all claims and have them adjudicated. *Lone Star Helicopters, Inc. v. State,* 1990 OK 111, 800 P.2d 235, 237 (agency had no authority to adjudicate breach-of-contract claim); *Walker v. Group Health Services, Inc.,* 2001 OK 2, ¶ 39, 37 P.3d 749, 762 (Board could not award damages for bad faith breach of an insurance contract). *Cf. Montana National Bank of Billings v. Yellowstone County,* 276 U.S. 499, 505, 48 S.Ct. 331, 333, 72 L.Ed. 673 (1928), (taxpayer seeking refund was not required to exhaust where tax entity was powerless to grant any appropriate relief).

¶ 8 Apache asks that our definition of an "ineffective remedy" include circumstances where a party would have been unsuccessful in an administrative proceeding. Some courts have stated that certainty of an adverse administrative decision may make exhaustion futile. *UDC Chairs Chapter, American Ass'n of University Professors v. Board of Trustees of University of District of Columbia,* 56 F.3d 1469, 1475 (D.C.Cir.1995); *Randolph–Sheppard Vendors of America v. Weinberger,* 795 F.2d 90, 105, (D.C.Cir.1986). However, the mere likelihood of an adverse decision is not sufficient to excuse a failure to exhaust. *Marine Mammal Conservancy, Inc. v. Department of Agriculture,* 134 F.3d 409, 413 (D.C.Cir.1998).

¶ 9 We applied this exception to the exhaustion doctrine in *Bankoff v. Board of*

*Adjustment of Wagoner County,* 1994 OK 58, 875 P.2d 1138, where we said that a party was not required to seek a zoning variance when it had previously been denied a conditional use permit. We explained that the law does not require one to do a vain or useless thing or to perform an unnecessary act to obtain relief. *Id.* 1994 OK 58, at n. 9, 875 P.2d at 1143. *Cf. Orion Corp. v. State,* 103 Wash.2d 441, 693 P.2d 1369, 1379 (1985), (the futility exception to the exhaustion doctrine is premised upon the rationale that courts will not require vain and useless acts). However, Apache's argument fails because the requirement to obtain a manufacturer's permit is required by statute.

■ ¶ 10 The requirement to exhaust administrative remedies is a prudential rule when exhaustion is not required by statute. *Waste Connections, Inc. v. Oklahoma Dept. of Environmental Quality,* 2002 OK 94, ¶ 8, 61 P.3d 219. The doctrine of exhaustion of administrative remedies, as a prudential rule judicially created, does not apply when the *Legislature* requires exhaustion of a remedy for obtaining a tax refund. When examining a statutory remedy to recover tax payments, we have said that "[g]enerally, when a statute creates both a right and a remedy for its enforcement the statutory remedy is exclusive." *R.R. Tway, Inc. v. Oklahoma Tax Commission,* 1995 OK 129, 910 P.2d 972, 978. Tax exemptions and deductions are matters of legislative grace. *Id.* In our case today, the right Apache seeks to enforce is a statu-

tory tax exemption for certain manufacturers, and it must thus follow available statutory procedures to obtain that exemption.

¶ 11 Section 1359.2 provides a procedure "in order to qualify for the exemption," and a manufacturer desiring the exemption *"shall be required* to secure from the Oklahoma Tax Commission a manufacturer exemption permit." The term "shall" is often used in a statute as part of a command or a mandatory duty. *Tulsa County Budget Bd. v. Tulsa County Excise Bd.,* 2003 OK 103, n. 25, 81 P.3d 662, 671; *State ex rel. Independent School Dist. No. 1 of Oklahoma County v. Barnes,* 1988 OK 70, 762 P.2d 921, 924. While it is true that law and equity will not require the performance of a vain or useless act, *Dewey v. State ex rel. Oklahoma Firefighters Pension and Retirement System,* 2001 OK 40, n. 26, 28 P.3d 539, 546, Apache's assertion of futility in the result of an administrative remedy is, in essence, an equitable defense to the application of a mandatory procedural statute used to obtain a tax exemption.[2] This Court has previously declined to interpose equity to block the requirements of mandatory procedural tax statutes. *R.R. Tway, Inc. v. Oklahoma Tax Commission,* 1995 OK 129, 910 P.2d 972, 978; *Whig Syndicate, Inc. v. Keyes,* 1992 OK 95, 836 P.2d 1283, 1288.[3] We thus agree with the Commission that Apache's claim for a refund for taxes paid between November 1, 1998 and February 29, 2000, is barred by Apache's failure to follow 68 O.S.Supp.1998 § 1359.2.[4]

2. For explanation and application of the maxim that the law compels no one to do vain or useless things, see *Broom's Legal Maxims,* 169 (R. Kersley 10th ed.1939); *Sir Anthony Main's Case,* 3 Co. Rep. 20 b, 21 a, 77 Eng. Rep. 80, 81 (K.B. 1596); *Black's Law Dictionary,* 1056–1057 (4th ed.1951), (definition for corresponding Latin maxim *lex neminem cogit ad vana seu inutilia* ).

3. It is true that the High Court has allowed the exhaustion requirement to be met by an administrative official stating that a particular claim would be denied in an administrative hearing. *Mathews v. Diaz,* 426 U.S. 67, 76, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), (stipulation of official was tantamount to a decision denying the application *and as a waiver of the exhaustion requirements* ). However, the particular official possessed discretion to determine the extent to which exhaustion of an administrative remedy was required. *Weinberger v. Salfi,* 422 U.S. 749,

766–767, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). No suggestion has been made by the parties that the Tax Commission is vested with discretion to waive the statutorily required permit.

4. Because we affirm the denial of a refund for taxes paid on or after November 1, 1998, we need not address whether Apache qualified for the exemption pursuant to the 1998 version of § 1352. That statute states at § 1352(9) & (10):

(9) "Manufacturing" means the activity of converting or conditioning tangible personal property by changing the form, composition, or quality of character of some existing material or materials, by procedures commonly regarded as manufacturing, compounding, processing or assembling, into a material or materials with a different form or use. "Manufacturing" does not include extractive industrial activities such as mining, quarrying, logging, and drilling for oil, gas and water, but may include processes subse-

¶ 12 We now examine Apache's claim for a refund for taxes paid between March 1, 1997 and November 1, 1998. The general exemption for manufacturers stated:

Exemptions. Manufacturers.

There are hereby specifically exempted from the tax levied by this article:

(1) Goods, wares, merchandise, and property purchased for the purpose of being used or consumed in the process of manufacturing, compounding, processing, assembling, or preparing for sale a finished article and such goods, wares, merchandise, or property become integral parts of the manufactured, compounded, processed, assembled, or prepared products or are consumed in the process of manufacturing, compounding, processing, assembling, or preparing products for resale. The term "manufacturing plants" shall mean those establishments primarily engaged in manufacturing or processing operations, and generally recognized as such;

68 O.S.Supp.1997 § 1359(1).

Another exemption for manufacturers stated:

(3) Sale of machinery and equipment purchased and used by persons establishing new manufacturing plants in Oklahoma, and machinery and equipment purchased or equipment built on site and used by persons in the operation of manufacturing plants already established in Oklahoma. This exemption shall not apply unless such machinery and equipment is incorporated into, and directly used in, the process of manufacturing property for sale or resale. The term "manufacturing plants" shall mean those establishments primarily engaged in manufacturing or processing operations, and generally recognized as such. . . .

68 O.S.Supp.1997 § 1359(3), (material omitted).

Manufacturing was defined as:

(I) "Manufacturing" means and includes every operation commencing with the first production stage of any article of tangible personal property and ending with the completion of tangible personal property having the physical properties which it has when transferred by the manufacturer to another.

68 O.S.Supp.1997 § 1352(I).

¶ 13 Apache argues that it purchased property for the purpose of being used in a process that changed an unsaleable hydrocarbon into a saleable product. Apache argues that processing occurs after the hydrocarbons reach the surface. These hydrocarbons are compressed, dehydrated, and flow through pipes located on the surface at the well site. Apache stated that raw hydrocarbons are not marketable at the moment they reach the surface, and that field processing is required by all buyers of oil and natural gas. Apache stated that its equipment performed the normal field processing. This processing occurred prior to the hydrocarbons passing through the sales meter located at the well.[5] According to Apache, the equipment on the site is entitled to the exemption. It seeks a refund related to the purchase of separators, separator parts, compressors, compressor parts and oil, flow lines, dehydrators, dehydrator parts, heater-treaters, parts, oil and water storage tanks and stock tanks.

■ ¶ 14 The parties discuss the meaning of the term "processing," the Commission asserting that such does not occur at the well site and Apache asserting the opposite. The Commission relies upon a treatise stating that what happens to hydrocarbons at a well is not processing; however, the material does

---

quent to extraction if such processes result in a change of the form or use of the material extracted;

(10) "Manufacturing operation" means the designing, manufacturing, compounding, processing, assembling, warehousing, or preparing of articles for sale as tangible personal property. A manufacturing operation begins at the point where the materials enter the manufacturing site

and ends at the point where the finished product leaves the manufacturing site. "Manufacturing operation" does not include administration, sales, distribution, transportation, site construction, or site maintenance;

5. The compressors purchased by Apache are not used for transportation, but to prepare the hydrocarbons for passing through the sales meter.

not discuss processing in the context of the Oklahoma Sales Tax Code. Apache relies upon testimony distinguishing extraction of hydrocarbons from the manipulation of the hydrocarbons after they are reduced to possession at the surface.

¶ 15 In *Dolese Bros. v. State ex rel. Oklahoma Tax Commission*, 2003 OK 4, 64 P.3d 1093, we explained our opinion in *Cain's Coffee Company v. City of Muskogee*, 1935 OK 450, 44 P.2d 50:

There being no applicable statutory definition of manufacturing in effect at that time, the court looked for guidance to cases from other jurisdictions and adopted the following from the Illinois Supreme Court:

"[T]he word 'manufacture' is not to be given its technical meaning. The Century Dictionary defines it as 'the production of articles for use from raw or prepared materials by giving these materials new forms, qualities, properties, or combinations, whether by hand labor or machine.' "

... The significance of Cain's Coffee is that it defined manufacturing in terms of an activity's transformative effect upon raw or prepared materials in the course of producing a new article for use.

*Dolese Bros.*, 2003 OK 4, at ¶ 16, 64 P.3d at 1100, (note and material omitted).

We then explained that the definition for manufacturing found in the 1993 version of § 1352, the same as in the 1997 version, continued with the concept of equating manufacturing with a process where one or more of the physical properties of the original raw materials were changed by that process. *Id.*, at ¶ 20, 64 P.3d at 1101. Apache's evidence shows a change in the physical properties by Apache's machinery; that is, a transformation of raw unmarketable materials to a marketable product.

¶ 16 The Commission argues that a particular activity may be considered as manufacturing for the purpose of the exemption only if or when that activity is generally recognized as manufacturing. Is the production process recognized as manufacturing? We addressed this issue in *Dolese* when we determined whether sand plants were engaged in manufacturing

In *Schulte Oil*, where we held that the remanufacture of used oilfield pipe constitutes manufacturing, we said of *Cain's Coffee* and *Tulsa Machinery [Co. v. Oklahoma Tax Commission*, 208 Okl. 138, 253 P.2d 1067 (1953)]:

"The salient point in each of these cases is that a product was changed into one that became marketable or more usable. Here, the process of rebuilding damaged oilfield pipe transforms a virtually unusable and nonmarketable product into serviceable and saleable merchandise. While it is true that after the remanufacturing process is accomplished the end product is still used oilfield pipe, the remanufactured article is nonetheless new and different from the form of the material used in making it.

¶ 30 Although natural and blended sand are both sand in their essential properties, the procedures applied by Dolese to the natural form of the material produce tangible personal property—blended sand—that is substantially new and different from that which originally existed. Natural sand is "a virtually unusable and nonmarketable product" in today's construction industry. Blended sand, although composed of the same materials as natural sand, is "nonetheless new and different from the form of the material used in making it."

*Dolese Bros.*, at ¶¶ 29–30, 64 P.3d at 1104.

We then said that "[a] person with knowledge of what takes place in the production of blended sand today would recognize the operations occurring at a sand production facility as manufacturing." *Id.* at ¶ 31, 64 P.3d at 1104.

¶ 17 Refining of hydrocarbons and converting them into various marketable products has long been considered in Pennsylvania as a type of manufacturing. *Appeal of Atlantic Refining Co.*, 398 Pa. 30, 156 A.2d 855, 857, *citing, Commonwealth v. National Oil Company, Limited*, 157 Pa. 516, 27 A. 374, (1893). Although the processing used by Apache is described as field processing, as opposed to a refining plant, the nature of both processes have the common characteristic of changing a raw product into a different physical form that is marketable for an intended use that is

different from the use of the raw product. Oklahoma is not the only state that considers whether an unmarketable product is changed into a marketable one, and whether a raw product is altered to a consumer product.[6] We are convinced that a person with knowledge of the processing that takes place in the production of a marketable gas from a raw unmarketable combination of hydrocarbons would recognize the process as manufacturing. We accordingly hold that Apache's evidence was sufficient to show that it was a manufacturer and entitled to the exemption for the period between March 1, 1997 and November 1, 1998.

¶ 18 The opinion of the Court of Civil Appeals is vacated. The Order of the Tax Commission is affirmed in part and reversed in part, and the matter is remanded to the Tax Commission for further proceedings consistent with this opinion.

**6.** *See, Schulte Oil Co., Inc. v. Oklahoma Tax Commission*, 1994 OK 103, 882 P.2d 65, 72–73, (manufacturing includes both (a) the production of new and raw material and (b) the "remanufacturing" of used and commercially valueless material by the application of machinery, labor and skill which transforms it into a marketable commodity); *In re American Warrior, Inc.*, 30 Kan. App.2d 532, 43 P.3d 828, 831 (2002), (process of splitting unmarketable natural gas into marketable helium, nitrogen, and marketable natural gas); *Department of Revenue ex rel. Luckett v. Allied Drum Service, Inc.*, 561 S.W.2d 323, 325–326 (Ky.1978), (a manufacturing process is one where material having no commercial value for its intended use before processing has appreciable commercial value for its intended use after processing); *Assessors of Boston v. Commissioner of Corporations and Taxation*, 323 Mass. 730, 84 N.E.2d 129, 137, (1949), (raw material unfit for consumption transformed to a consumer product fit for consumption).

**1.** The terms of 68 O.S. Supp.2003 § 1352(9) and (10) are:
   9. "Manufacturing" means and includes the activity of converting or conditioning tangible personal property by changing the form, composition, or quality of character of some existing material or materials, including natural resources, by procedures commonly regarded by the average person as manufacturing, compounding, processing or assembling, into a material or materials with a different form or use. *"Manufacturing" does not include extractive industrial activities such as mining, quarrying, logging, and drilling for oil, gas and water, nor oil and gas field processes, such as natural pressure reduction, mechani-*

¶ 19 LAVENDER, HARGRAVE, KAUGER, WINCHESTER, EDMONDSON, JJ., Concur.

¶ 20 WATT, C.J., (joins OPALA, V.C.J.), OPALA, V.C.J., (joins WATT C.J.), HODGES (joins WATT, C.J.), BOUDREAU, (joins WATT, C.J.), JJ., Dissent.

OPALA, V.C.J., with whom WATT, C.J., joins, dissenting.

¶ 1 The court's opinion holds that the language of the 2003 amendment[1] *cannot* be considered in interpreting the earlier version of the statute. **I disagree.** It is a fundamental rule of statutory construction that amendatory language intended to clarify *ambiguous* text of an earlier statute is to be treated as having *retroactive* effect.[2]

¶ 2 Both the Tax Commission.and the legislature (in its *afterenacted* 2003 amendment) treat the taxable event in question here in

cal separation, heating, cooling, dehydration and compression;
   10. "Manufacturing operation" means the designing, manufacturing, compounding, processing, assembling, warehousing, or preparing of articles for sale as tangible personal property. A manufacturing operation begins at the point where the materials enter the manufacturing site and ends at the point where a finished product leaves the manufacturing site. "Manufacturing operation" does not include administration, sales, distribution, transportation, site construction, or site maintenance. *Extractive activities and field processes shall not be deemed to be a part of a manufacturing operation even when performed by a person otherwise engaged in manufacturing;* (emphasis added).
The terms of 68 O.S. Supp.2003 § 1359(1) are:
   Exemptions—Manufacturers
   There are hereby specifically exempted from the tax levied by Section 1350 et seq. of this title:
   1. Sales of goods, wares, merchandise, tangible personal property, machinery and equipment to a manufacturer for use in a manufacturing operation. *Goods, wares, merchandise, property, machinery and equipment used in a nonmanufacturing activity or process as set forth in paragraph 9 of Section 1352 of this title shall not be eligible for the exemption provided for in this subsection by virtue of the activity or process being performed in conjunction with or integrated into a manufacturing operation;* (emphasis added).

**2.** *Cox v. Dawson*, 1996 OK 11, ¶ 5, 911 P.2d 272, 276.

the very same manner. The 2003 amendment is *clear*. Its terms' plainly show that the legislature never intended for the manufacturing exemption to apply to field processing. It is also clear that the **legislature's intent in passing the 2003 amendment was not to change the law but rather to** *clarify* **it.**

¶ 3 Subsequent amendments can be (and often are) used to clarify legislative intent in the earlier-enacted law.[3] A longstanding agency construction interpreting an ambiguous or uncertain statute will not be disturbed without cogent reason.[4] Some of these interpretive agency devices constitute the contemporaneous construction of statutory text where the statute has been in long use.[5] Courts give considerable weight to meaning ascriptions as well as to practices of an agency charged with the law's execution. **There is no reason why this court should not do the same here.**[6]

¶ 4 Administrators usually participate in the law-making process and may be especially well informed of legislative intent.[7] Because there is an ongoing interaction of administrators with legislators and agency officials are afforded frequent contact with the law-making process that culminates in the enactment of statutory law, we must give deference to agency construction.[8]

¶ 5 There is here *record proof* to support the Tax Commission's construction of the taxing statute in question. The agency maintains that the activities of the taxpayer do not qualify for the manufacturing exemption

3. *Letteer v. Conservancy District No. 30*, 1963 OK 218, ¶ 9, 385 P.2d 796, 801.

4. *Oral Roberts University v. Oklahoma Tax Commission*, 1985 OK 97, 714 P.2d 1013, 1015. Here the court held that although an administrative agency generally has the flexibility to correct its own erroneous interpretation of the law, the previous agency construction is entitled to the "highest respect from the courts", especially when that construction is definitely settled and *uniformly applied for a number of years.* Id. at 1015. (Emphasis added). The court concluded that the earlier agency-imparted meaning will not be disturbed unless (a) the tax law in question is subject to more than one construction or interpretation and (b) there exist very cogent reasons for a change in the construction.

5. *Davis v. United States*, 495 U.S. 472, 484, 110 S.Ct. 2014, 2022, 109 L.Ed.2d 457 (1990). *Davis* suggests that [an agency's] ruling is accorded "considerable weight" if it (1) was issued contemporaneously with the statute that is construed, (2) has existed for a long period of time, and (3) **the statute's reenactment retains the language that was earlier construed by the agency.**
The U.S. Supreme Court declared as early as 1827 that "[i]n the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect." *Edwards' Lessee v. Darby*, 25 U.S. (12 Wheat.) 206, 210, 6 L.Ed. 603 (1827). **Kenneth Culp Davis**, Administrative Law, § 5.04 at 133 (3d ed.1972). Professor Davis continues at 133 by adding that "the Court follows [this] idea today whenever the forces the other way are not too strong." More recently in *Davis* at 484, 110 S.Ct. 2014, the Court stated that although "the [Internal Revenue] Service's interpretive *rulings* do not have the force and effect of regulations, ... we give an agency's interpretations and practices *considerable weight* where they involve the contemporaneous construction of a statute and where they have been in long use." (Emphasis added).
Two arguments traditionally have been offered for upholding longstanding agency interpretation. Deference to longstanding interpretation (1) provides certainty and predictability to persons affected by the interpretations and (2) encourages the lawmakers to make better laws. See Cass R. Sunstein. "Interpreting Statutes in the Regulatory State," 103 Harv. L.Rev. 405, 457–59 (1989).

6. **All** the taxable events (from March 1, 1997 to October 31, 1998) for which the court's pronouncement approves today a tax payer's refund occurred during a period in which the **precise impact** of the "manufacturing exemption" upon **post-lifting on-site processing remained entirely unconcretized either by legislative amendments or by this court's jurisprudence.** It is this unconcretized state of the law's applicable norms that allowed the restrictive agency construction, later adopted by the 2003 amendment, to carry the day. Davis, supra note 5 at 133.

7. Davis, supra note 5 at 133. Professor Davis adds that "... [t]he longer the regulations have been outstanding the more reluctant a court may be to upset them ... [and][s]uch specific and established administrative interpretation of the statute is valid and 'should not be overruled except for weighty reasons.'"

8. Linda Galler, "Emerging Standards For Judicial Review Of IRS Revenue Rulings", 72 B.U.L.Rev. 841, 876–77 (1992). See *National Muffler Dealers Ass'n v. U.S.*, 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979).

under the pre–2003 state of the law governing that exemption. The 2003 amendment requires that three conditions be met in order for the items of liability to be exempt: (1) the activity must change the form, composition or quality of character of some existing material; (2) the change must occur by procedures commonly regarded as manufacturing, compounding, processing or assembling; and (3) the material resulting must have a different form or use. As the record clearly reveals, *purely extractive on-site activities do not qualify for the exemption.*

¶ 6 The Tax Commission urges that all the well-site activity upon which the claims are based is not generally recognized as manufacturing within the meaning of § 1359, which provides an exemption from sales tax for machinery and equipment "purchased and used by persons establishing new manufacturing plants in Oklahoma, and machinery and equipment purchased or equipment built on site and used by persons in the operation of manufacturing plants already established in Oklahoma." The phrase "manufacturing plants" means "those establishments primarily engaged in manufacturing or processing operations, and generally recognized as such."

¶ 7 The Tax Commission takes the position that the activities of the taxpayer at well-sites are not commonly regarded as manufacturing or processing but rather as extractive in nature (a part of the lifting operations), and, therefore as not exempt by § 1359. To support this contention the Tax Commission issued its May 2000 Order No.2000–05–03–016 which states:

> Within the industry itself, "Field processes, which normally take place on or near the lease, such as natural pressure reduction, mechanical separation, heating, cooling, dehydration, and compression are NOT considered processing."[9] And under the industry classification system developed internationally and published by the United States Office of Management and Budget, activities such as operating separators, emulsion breakers, desilting equipment, field gathering lines and "all other activities in the preparation of oil and gas up to the point of shipment from the producing property," are considered as Oil and Gas Extraction, which is classified as 'mining'—NOT manufacturing."[10]

**The order's quoted text is the quintessence of the Tax Commission's pre–2003 construction.**

## SUMMARY

¶ 8 The Court's pronouncement does not accord with the law. A well-established rule teaches that statutes exempting one from taxation are to be strictly construed against the exemption.[11] There had been here **neither an antecedent precedential court pronouncement nor legislative amendment** altering the Tax Commission's uninterrupted course of applying its own administrative construction. The legislature's 2003 amendment expressly follows that longstanding agency construction by providing that "extractive activities and field processes shall not be deemed to be a part of a manufacturing operation even when performed by a person engaged in manufacturing." The Court of Civil Appeals' opinion should hence be left undisturbed.

WATT, C.J., with whom OPALA, V.C.J., HODGES and BOUDREAU, JJ. join, dissenting:

## DISSENTING OPINION

¶ 1 In 2003, the legislature amended 68 O.S. Supp.2003 § 1352 to expressly provide that "Extractive activities and field processes shall not be deemed to be a part of a manufacturing operation even when performed by a person engaged in manufacturing." This, of course, was precisely what Apache was doing. The majority opinion holds that the language of the 2003 amendment cannot be considered in interpreting earlier versions of

9. Howard R. Williams & Charles J. Meyers, Oil and Gas Law 831 (1998) (emphasis added).

10. Office of Management and Budget, North American Industry Classification System—United States 67 (1997) (emphasis added).

11. *McDonald's Corp. v. Oklahoma Tax Com'n,* 1977 OK 74, 563 P.2d 635; *Bert Smith Road Machinery Co. v. Oklahoma Tax Com'n,* 1977 OK 75, 563 P.2d 641; *London Square Village, Inc. v. Oklahoma County Equalization and Excise Bd.,* 1976 OK 159, 559 P.2d 1224.

the statute. I disagree because it is a fundamental rule of statutory construction that amendatory language will be given retroactive effect in order to clarify language in an earlier version of a statute that was ambiguous.

¶ 2 Where, as here, a prior enactment was ambiguous, "it may be presumed that the amendment was made to more clearly express the legislative intention previously indefinitely expressed." *Magnolia Pipe Line Co. v. Oklahoma Tax Commission,* 1946 OK 113 at ¶ 11, 167 P.2d 884 at 888, quoted with approval in *Texas County Irrigation and Water Resources Ass'n v. Oklahoma Water Resources Board,* 1990 OK 121, 803 P.2d 1119. This matter is clearly such a case so the 2003 amendment should be applied retroactively. Thus, I think that the opinion's reliance on *Dolese Bros. v. Oklahoma Tax Commission,* 2003 OK 4, 64 P.3d 1093, as a basis for its refusal to do so is misplaced. To apply the reasoning of *Dolese* in the face of the clear language of the 2003 amendment appears agnostic to me, as it seems likely that the amendment was the legislature's response to *Dolese.*

¶ 3 Allowing the refund for the 1997–98 period would require reaching the conclusion that the legislature intended to change the law, not simply clarify it, when it passed the 2003 amendment. But, given the timing of *Dolese* and the subsequent 2003 amendment, passed in the first legislative session after *Dolese* was decided, it is clear that the legislature never intended for the manufacturing exemption to apply to field processing of oil, gas, or other minerals extracted from the earth. Accordingly, I would have let stand the opinion of the Court of Civil Appeals.

¶ 4 I respectfully dissent.