2006 OK CIV APP 68

**In the Matter of the Protest to the Denial of the Sales Tax Claims for Refund of HILAND DAIRY FOODS COMPANY, LLC., Appellant,**

v.

**OKLAHOMA TAX COMMISSION, Appellee.**

**No. 102613.**

Court of Civil Appeals of Oklahoma, Division No. 1.

May 5, 2006.

Thomas D. Robertson, Karen M. Grundy, Stuart E. Van DeWiele, Nichols, Wolfe, Stamper, Nally, Fallis & Robertson, Inc., Tulsa, OK, for Appellant.

Douglas B. Allen, General Counsel, Marjorie L. Welch, First Deputy General Counsel, Oklahoma City, OK, for Appellee.

Opinion by CAROL M. HANSEN, Judge.

¶ 1 Appellant, Hiland Dairy Foods Company, LLC. (Dairy), seeks review of an order of Appellee, Oklahoma Tax Commission (OTC), denying Dairy's protest to the denial of its sales tax refund claim. At issue is whether the Oklahoma Sales Tax Code, 68 O.S.2001 § 1350 *et seq.*, requires a manufacturer to obtain from OTC a separate manufacturer exemption permit (MEP) for each place of business in the State of Oklahoma. We hold it does not and reverse.

¶ 2 Dairy is a manufacturer and wholesale distributor of dairy products with its business headquarters in Springfield, Missouri. It has manufacturing facilities in Springfield as well as in Norman and Chandler, Oklahoma, Fayetteville and Fort Smith, Arkansas, and Wichita, Kansas. Dairy acquired the Norman plant in approximately 1994 from Gilt Edge, and acquired the Chandler plant in May 2001 from Farm Fresh. Dairy held MEP No. 242028 issued by OTC with an effective date of December 10, 1986 and an expiration date of February 6, 2004. The permit was issued to "Hiland Dairy Co." of Springfield, Missouri, and listed the business location as "Hiland/Gilt Edge" in Norman, Oklahoma.

¶ 3 Apparently unfamiliar with the benefits of the MEP, Dairy's management in Oklahoma had been paying sales taxes on electric service at both the Norman and Chandler plants. In late 2001 and 2002, representatives of OTC and the Oklahoma Department of Commerce visited the general manager of the Norman plant to promote state programs for economic growth in Oklahoma. The manager testified the representatives told him energy used in the manufacturing process

was tax exempt and the company could apply for a refund of sales taxes paid on energy up to 36 months prior to the application. He said he was unaware Dairy had previously obtained an exemption certificate. Dairy's controller said he and a successor manager met with an OTC auditor regarding the sales tax exemption on utilities, and the auditor told them the company was eligible for a refund up to 36 months upon approval of its tax exemption. The successor manager for the Norman plant said he filed an application for tax exemption for the Norman plant, and the controller filed an application for the Chandler plant.[1]

¶ 4 On April 7, 2004, an OTC auditor sent a letter to Dairy regarding the Chandler plant, stating Dairy "qualifies as a manufacturer and a permit has been updated." The letter referenced permit no. 242028, the same number as on Dairy's earlier permit. The auditor sent a letter to OG & E the same day notifying it of Dairy's sales tax exemption effective August 8, 2003.

¶ 5 A reports' clerk for OG & E testified his job duties included processing sales tax refund requests for customers. He said his practice was to "ask for a refund for three years or back to when the account started." Dairy had not owned the Chandler plant for three years prior to August 8, 2003, so he requested a refund from July 2001, the date of Dairy's first billing from OG & E on the Chandler plant, to April 2004, the date OG & E was notified of the exemption.

¶ 6 On August 3, 2004, OTC issued letters of credit to OG & E totaling $258,171.35 for Dairy's refunds on the Chandler plant. On August 30, 2004, OTC sent a letter to Dairy stating $128,604.24 was refunded in error and asking for repayment. The letter stated,

It has been determined by the Office of General Counsel of the Oklahoma Tax Commission that a manufacturing exemption cannot be extended to a taxpayer prior to the date of registration and application for exemption. This position has been affirmed by the Supreme Court of the State of Oklahoma in the case of Apache

Corporation vs. State of Oklahoma, ex rel. Oklahoma Tax Commission.

In view of this position, the portion of the refund based on sales tax paid by Hiland prior to December of 2002 has been denied.

Dairy's attorney sent OTC a letter declining to repay the amount demanded. OTC treated the letter as a protest and set the matter for hearing.

¶ 7 At hearing, Dairy took the position OTC had a policy of allowing refunds of taxes erroneously remitted for a period up to three years prior to the date of filing a claim for refund, and its change of policy based on *Apache Corp. v. State ex rel. Okla. Tax Comm'n (Apache)*, 2004 OK 48, 98 P.3d 1061, should have prospective application only. Dairy argued in the alternative it already had an MEP for the relevant time period, and the MEP applied to the Chandler plant as well as the Norman plant. OTC took the position refunds were not available for sales taxes paid prior to the date of application for an MEP, and the Oklahoma Sales Tax Code requires a manufacturer to have a separate MEP for each manufacturing facility location in the state. After hearing evidence, the OTC administrative law judge issued an order denying Dairy's protest. OTC adopted the order as its own.

¶ 8 In a protest hearing before the Tax Commission, the protestant bears the burden of proving it is entitled to the relief requested. *Enterprise Management Consultants, Inc. v. State ex rel. Oklahoma Tax Comm'n*, 1988 OK 91, 768 P.2d 359, 362 n. 11. In reviewing an order of the Tax Commission, we will examine the entire record to determine whether the findings and conclusions set forth in the order are supported by substantial evidence. We will affirm the order if it is supported by substantial evidence and is otherwise free of error. *Samson Hydrocarbons Co. v. Oklahoma Tax Comm'n*, 1998 OK 82, 976 P.2d 532, 535.

¶ 9 Dairy appeals pursuant to 68 O.S.Supp.2002 § 225, contending OTC erred in failing to find OTC had a policy of granting pre-application refunds of sales tax, in

---

1. The sales tax refund for the Norman plant is not at issue.

allowing a change in that policy to apply retrospectively, and in finding Dairy's earlier exemption for its Norman plant did not apply to the Chandler plant. The Oklahoma Sales Tax Code exempts from taxation "[s]ales of goods, wares, merchandise, tangible personal property, machinery and equipment to a manufacturer for use in a manufacturing operation." 68 O.S.Supp.2005 § 1359(1). In 1998, the Legislature added § 1359.2 [2] to the Code, requiring manufacturers to obtain an MEP in order to claim the tax exemption of § 1359(1).

¶ 10 In *Apache*, the Oklahoma Supreme Court considered whether an oil and gas producer who compressed and dehydrated gas at the wellhead to make it marketable was eligible for a manufacturer's sales tax exemption on its processing equipment. The producer had not applied to OTC for an MEP. The Court held the wellhead processing that transformed an unmarketable product into a marketable one qualified as manufacturing, but the producer was not entitled to a sales tax refund because it had failed to follow available statutory procedures under § 1359.2 to obtain the exemption. *Apache*, 98 P.3d at 1064 and 1067.

¶ 11 The Court's opinion in *Apache* did not change existing law, but applied a statutory change that occurred in 1998. Following enactment of § 1359.2, a manufacturer is required to obtain an MEP in order to claim the sales tax exemption provided in § 1359(1). If OTC employees represented otherwise, they did so *ultra vires*. Where there is no power to act, a public official cannot bind a government entity even if he or she mistakenly or falsely asserts such authority. *Indiana Nat'l Bank v. State Dept. of Human Services*, 1993 OK 101, 857 P.2d 53, 64.[3] Dairy may not enforce representations made by OTC employees acting outside their authority.

¶ 12 The parties agree Dairy continuously held a valid exemption permit, issued under prior law and apparently renewed under current law, listing the location of the Norman plant. OTC asserts a manufacturer must obtain a separate MEP for each manufacturing site in the state, arguing § 1359.2(C) ties the MEP to the sales tax permit issued un-

2. 68 O.S.2001 § 1359.2 provides,

A. In order to qualify for the exemption authorized in paragraph 1 of Section 1359 of Title 68 of the Oklahoma Statutes, at the time of sale, the person to whom the sale is made, provided the purchaser is a resident of this state, shall be required to furnish the vendor proof of eligibility for the exemption as required by this section. All vendors shall honor the proof of eligibility for sales tax exemption as authorized under this section, and sales to a person providing such proof shall be exempt from the tax levied by Section 1350 et seq. of Title 68 of the Oklahoma Statutes.

B. Each resident manufacturer wishing to claim the exemption authorized in paragraph 1 of Section 1359 of Title 68 of the Oklahoma Statutes shall be required to secure from the Oklahoma Tax Commission a manufacturer exemption permit, the size and design of which shall be prescribed by the Tax Commission. This permit shall constitute proof of eligibility for the exemption provided in paragraph 1 of Section 1359 of Title 68 of the Oklahoma Statutes. Each such manufacturer shall file with the Tax Commission an application for an exemption permit, setting forth such information as the Tax Commission may require. The application shall be signed by the owner of the business or representative of the business entity and as a natural person, and, in the case of a corporation, as a legally constituted officer thereof.

C. Each manufacturer exemption permit issued shall be valid for a period of three (3) years from the date of issuance. If a manufacturer applying for a manufacturer exemption permit is already the holder of a manufacturer's sales tax permit issued under Section 1364 of Title 68 of the Oklahoma Statutes at the time of initial application, the manufacturer exemption permit shall be issued with an expiration date which corresponds with the expiration date of the manufacturer's sales tax permit. Thereafter, the Tax Commission shall issue the exemption permits at the same time of issuance or renewal of the manufacturer's sales tax permit issued under Section 1364 of Title 68 of the Oklahoma Statutes.

D. The Tax Commission shall honor all manufacturer's limited exemption certificates issued prior to the effective date of this act. However, holders of such certificates shall apply for a manufacturer exemption permit pursuant to the provisions of this section at the same time they apply for issuance or renewal of a manufacturer's sales tax permit.

3. *See also State ex rel. Oklahoma Tax Comm'n v. Emery*, 1982 OK CIV APP 13, 645 P.2d 1048, 1051 ("[L]aches and estoppel do not apply against the state acting in its sovereign capacity because of mistakes or errors of its employees. [citation omitted.] The power of taxation is an inherent and essential attribute of sovereignty.").

der 68 O.S.Supp.2003 § 1364 by prescribing that the expiration date of the MEP correspond with the expiration date of the sales tax permit. Section 1364(E) provides,

A separate [sales tax] permit for each additional place of business to be operated must be obtained from the Tax Commission for a fee of Ten Dollars ($10.00). Such permit shall be good for a period of three (3) years. The Tax Commission shall grant and issue to each applicant a separate permit for each place of business in this state, upon proper application therefor and verification thereof by the Tax Commission.

The Legislature expressly directed each applicant must obtain a separate sales tax permit for each place of business, but it did not include such language in the statute requiring MEPs. Instead, it directed that "each resident manufacturer" must secure an MEP.

¶ 13 Our obligation is to give effect to the intent of the Legislature as expressed in the language of the statute. *Strong v. Laubach,* 2004 OK 21, 89 P.3d 1066, 1070. We will presume the Legislature expressed its intent in the statute and intended what it expressed. *King v. King,* 2005 OK 4, 107 P.3d 570, 579. The language of § 1359.2 unambiguously places the duty to obtain an MEP on each resident manufacturer, *not* on each place of business of the manufacturer. That a manufacturer may have multiple sales tax permits as a result of having multiple places of business does not of necessity lead to the conclusion the manufacturer must have multiple MEPs. The State of Oklahoma has a need for sales tax permits, under which the vendor collects sales tax from consumers, to be separated by locality, because the sales tax rate may differ depending upon the place of delivery of property or services subject to the tax. In contrast, there is no need for MEPs to be separated by locality, because their purpose is to notify the manufacturer's suppliers of its sales tax exempt status.

¶ 14 OTC's action in changing the statutory requirements by internal policy without a rule-making violates the Administrative Procedures Act, 75 O.S.2001 § 302(D), which prohibits an agency from expanding upon or limiting a statute by "internal policy, memorandum, or other form of action not otherwise authorized by the Administrative Procedures Act." OTC erred as a matter of law in ruling the Oklahoma Sales Tax Code requires a manufacturer to have a separate MEP for each manufacturing facility location in the state.

¶ 15 Accordingly, OTC's order is REVERSED and this matter is REMANDED for determination of the amount of Dairy's sales tax refund.

BELL, P.J., and JOPLIN, J., concur.